**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Miami Division

Yolaisy Perez, as the presumptive
Personal Representative of the Estate of             Case No.:
Lester Jesus Machado,

     *Plaintiff*,

v.

CITY OF HIALEAH;
LIEUTENANT ANTONIO LUIS,
individually and in his official capacity
as a police officer for the City of Hialeah;
OFFICER JOSE ABEL, individually
and in his official capacity as a police
officer for the City of Hialeah; OFFICER
FELIX ELIAS, individually and in
his official capacity as a police officer
for the City of Hialeah; OFFICER DANIEL
GARCIA, individually and in his official capacity
as a police officer for the City of Hialeah; OFFICER
DANIEL GATO, individually and in his official capacity
as a police officer for the City of Hialeah; OFFICER
ESTEBAN HOLLAND, individually and his official
Capacity as a police officer for the City of Hialeah;
OFFICER ADRIAN VIDAL, individually and in
his official capacity as a police officer for the
City of Hialeah; OFFICER TEANNIE HERNANDEZ,
individually and in her official capacity as a police
officer for the City of Hialeah; OFFICER MARIA
BENITEZ, individually and in her official capacity
as a police officer for the City of Hialeah; OFFICER
LORENZO RODRIGUEZ, individually and in his
official capacity as a police for the City of Hialeah;
OFFICER JAMES BURKE, individually and in his
official capacity as a police officer for the City of
Hialeah; and OFFICER JOSE PICO, individually and
in his official capacity as a police officer for the
City of Hialeah;

     *Defendants*.

_____/

<u>**COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

Plaintiff, Yolaisy Perez, as presumptive Personal Representative of the Estate of Lester Jesus Machado ("Machado"), deceased, sues Defendants, City of Hialeah ("Hialeah" or the "City""); LIEUTENANT ANTONIO LUIS, individually and in his official capacity as a police officer for the City of Hialeah ("Luis"); OFFICER JOSE ABEL, individually and in his official capacity as a police officer for the City of Hialeah ("Abel"), OFFICER FELIX ELIAS, individually and in his official capacity as a police officer for the City of Hialeah ("Elias"); OFFICER DANIEL GARCIA, individually and in his official capacity as a police officer for the City of Hialeah ("Garcia"); OFFICER DANIEL GATO, individually and in his official capacity as a police officer for the City of Hialeah ("Gato"); OFFICER ESTEBAN HOLLAND, individually and his official capacity as a policy officer for the City of Hialeah ("Holland"), OFFICER ADRIAN VIDAL, individually and in his official capacity as a policy officer for the City of Hialeah ("Vidal"); OFFICER TEANNIE HERNANDEZ, individually and in her official capacity as a police officer for the City of Hialeah ("Hernandez"); OFFICER MARIA BENITEZ, individually and in her official capacity as a police officer for the City of Hialeah ("Benitez"); OFFICER LORENZO RODRIGUEZ, individually and in his official capacity as a police officer for the City of Hialeah ("Rodriguez"); OFFICER JAMES BURKE, individually and in his official capacity as a police officer for the City of Hialeah ("Burke"); and OFFICER JOSE PICO ("Pico"), individually and in his official capacity as a police officer for the City of Hialeah; independently, jointly and severally, and allege:

## Nature of the Case and Identification of the Parties

1. This lawsuit presents claims for damages for the wrongful death of 24 year old Machado, brought by Yolaisy Perez, as Personal Representative of his Estate, on behalf of the Estate and his statutory survivors.

2. The Plaintiff, Yolaisy Perez, is and was at all times material hereto an adult resident and citizen of the State of Florida.

3. Mrs. Perez is, pursuant to the laws of the State of Florida, the presumptive Personal Representative of the Estate of her son, Lester Jesus Machado, and is authorized by law to bring this action.

4. Machado died as a result of gunshot wounds sustained on or about October 1, 2017, when he was shot and killed by the City of Hialeah's police officers named herein who were then employed by the City and acting in the scope of their capacity as police officers for the City.

5. The Defendant City is a municipality within Miami-Dade County, organized under the laws of the State of Florida, and is responsible through its officers, employees, servants, and agents for enforcing the rules and regulations of the City, and for ensuring that its officers, employees, servants, and agents obey the laws of the United States and of the State of Florida.

6. The City at all times material hereto operated the City of Hialeah Police Department (the "Department").

7. Defendants Luis, Hernandez, Benitez, Rodriguez, Burke, Pico, Abel, Vidal, Garcia, Holland, Elias, and Daniel Gato, were at all times material hereto, duly appointed

police officers of the Department, acting within the course and scope of their employment and under color of law, employed by the City.

8.  This action alleges violations of civil rights and of state and federal laws that resulted in Machado's death on October 1, 2017.

9.  This suit asserts that the Defendants acted illegally, improperly, and negligently in that the acts and/or omissions of the City, its police department, and its police officers,  created an atmosphere of hostility and violence against citizens, including Machado, by among other things, negligent use of excessive force, intentional excessive use of force, conducting improper high speed chases using police vehicles, and failing to take remedial action in the face of substantial evidence of a pattern or practice of excessive use of force by City police officers.

10. Further, this lawsuit alleges that on October 1, 2017, Officers Abel, Vidal, Garcia, Holland, Elias, and Gatounjustifiably and without provocation shot and killed Machado.

11. Defendants Hernandez, Benitez, Rodriguez, Burke, Able, and Pico all participated in an improper police chase through the streets of Hialeah and into unincorporated ,Miami-Dade County, where Machado ultimately lost control of his motor vehicle due to being rammed from the rear and crashed into a Metrorail support column near N.W. 79th Street and 37th Avenue.

12. Defendant Luis, a Lieutenant in the Hialeah Police Department, participated in the improper chase, at one point countermanding an order given by another officer to stop the chase, continuing personally to pursue Machado, ramming Machado's vehicle from the rear, causing Machado to lose control and crash as described

above.  Immediately after Machado's vehicle came to stop, the Defendants listed in paragraph 4, above, opened fire, discharging approximately 128 rounds of 9mm projectiles at Machado's vehicle, striking the vehicle over 80 times.  Subsequently, the medical examiner removed 7 projectiles from Machado's body, including one from his skull and one from his stomach.

13.    As alleged more particularly herein, Defendant City and its police officers are legally liable for Machado's death because of their pattern or practice of permitting, acquiescing to, and/or implicitly condoning excessive use of force by its police officers in the exercise of their official functions under color of law.

14.    This lawsuit alleges that the City and its police officers named herein were deliberately indifferent to the rights of the public, including specifically Machado, in failing to have and follow a proper protocol for police chases and the use of force during police chases thus ignoring the rights of its citizens, including Machado. Such failure resulted in police officers operating on a day-to-day basis without any real concern for internal supervisory review so that "street justice" became commonplace.  This failure resulted in an atmosphere of invulnerability for the members of the police force.  The City's dereliction of its governmental function as described herein culminated in the improper police chase described herein and the shooting death of Machado on October 1, 2017.

15.    Machado was killed after the police officers named herein fired 128 gun shots at close range, many striking Machado in his body, even though immediately prior to the shooting Machado was unarmed, his vehicle had come to stop, and he was not a threat to any of the officers, himself, or anyone else.

16. In the immediate aftermath of the shooting, Machado was found dead on the passenger side of his vehicle's back seat. It is apparent that after the crash, and the hail of gun fire leveled at him, Machado was seeking shelter and protection from the gunfire, and was not resisting, attempting to flee or retaliate in any way against the overwhelming fire power leveled against him.

17. Plaintiff seeks damages against Defendants for violation of Machado's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America pursuant to 42 U.S.C. § 1983, as well as other federal laws. Additionally, Plaintiff asserts state law claims for negligent wrongful death and demands trial by jury.

## Jurisdiction and Venue

18. This action for damages is brought to redress violations of federally protected constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America, along with supplemental state law claims for wrongful death.

19. This Court enjoys jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 2201-02; whereas 28 U.S.C. § 1367(a) grants the Court supplemental jurisdiction over the state law claims.

20. Furthermore, additional pendent claims under the laws of the State of Florida for wrongful death are brought pursuant to Florida Statute §§ 768.16 - 26 (the "Sovereign Immunity in Tort Actions" statute).

21. Venue properly lies in the Southern District of Florida because all events giving rise to this action occurred in Miami-Dade County, Florida.

22.     Notice of this claim has been provided to the Defendants in accordance with Fla. Stat. §768.28 and Plaintiff has satisfied all conditions precedent to bring this lawsuit. (See letter to Hialeah Mayor Carlos Hernandez, *et al*, dated October 27, 2017, a copy of which is attached hereto as Exhibit A).

### Jury Demand

23.     Plaintiff demands a trial by jury of all issues so triable as of right.

### General Allegations

24.     On or about Sunday, October 1, 2017, at approximately 4 a.m., a police officer employed by the City believed to be Defendant Hernandez allegedly stopped Machado for a routine traffic violation near 22nd Street and 9th Avenue in Hialeah. For reasons unknown, Machado left the scene where the initial traffic stop took place.  Thereafter, the Defendant police officers named herein commenced a high speed chase through the streets of Hialeah, shooting at Machado during the chase at least once.  It is unknown if Machado was struck by a bullet at that time.  The high speed chase continued until Machado crashed his vehicle near N.W. 79th Street and 35th Avenue, just outside of Hialeah city limits.  At that time, unjustifiably and without provocation, the six police officers identified herein shot at Machado no less than 128 times, striking him multiple times, and killing him.  Subsequently, the medical examiner removed seven 9mm projectiles from Machado's body.

25.     During the chase, a Hialeah Police Department Sergeant called off the chase via radio.  However, Defendant Luis countermanded that order, continued personally to pursue Machado in his own police cruiser, rammed Machado's vehicle from the rear causing Machado to lose control of his vehicle and crash into a Metrorail

support column.  At that point, Machado's vehicle was stopped, Machado was unarmed, and Machado presented no risk of harm to anyone.  For no apparent reason, the six officers named herein immediately and repeatedly shot Machado until he was dead.

26.     The Defendant officers' improper and unnecessary high speed chase and subsequent shooting at and killing Machado is but one of many inappropriate incidents of excessive use of force by City police officers, including shootings in the City and involving the Department.

### PATTERN & PRACTICE REGARDING EXCESSIVE USE OF FORCE

27.     On July 31, 2010, a Hialeah Police Officer, Ruben Miguel, conducted a traffic stop on a Mr. Martinez.  Officer Miguel was seen by several citizen witnesses nearby pulling Martinez from his vehicle and kicking him repeatedly once Martinez was on the ground.  A security guard at a Metrorail station across the street from where this incident occurred observed the entire event. The witness, Mr. Reeves, advised that he yelled at Officer Miguel, "Enough!" after which Miguel stopped kicking Martinez, handcuffed him, and put him in the back of a police vehicle.  Later, Reeves stated that Miguel told him that Martinez had "just killed someone," which was false and apparently made to justify Miguel's violence towards Martinez.

28.     On December 12, 2012, a juvenile, having the initials D.E., was in custody, handcuffed in the back seat of a Hialeah police car. Hialeah police officer Barbaro Hernandez opened the car door and demanded that D.E. apologize for calling Hernandez an offensive name.   D.E. refused to apologize, which resulted in

Hernandez striking him in the face several times.  This incident was witnessed by two other Hialeah police officers who stood by and did nothing.

29.   On September 4, 2013, a Mr. Charles and some friends were at a restaurant in Hialeah having drinks.  As they were leaving, a dispute developed between the restaurant manager and Mr. Charles concerning the payment of the bill.  The manager asked a Hialeah police officer, Wilcox, to intervene.  Officer Wilcox confiscated Mr. Charles's ID card, placed him in a half-nelson or an arm bar, and took him outside.  Once outside, Wilcox placed Charles in a choke hold, slammed him to the ground injuring his ribs, and placed him under arrest. During this time, a second Hialeah officer intervened and assisted in "choking out" Mr. Charles, even though he was already hand-cuffed.

30.   On May 21, 2011, Hialeah police officer Medina stopped a Mr. Rodriguez for a traffic violation.  Mr. Rodriguez was a commercial driver and was concerned about the effect of receiving a traffic ticket on his profession.  Medina wrote two traffic citations, presented them to Mr. Rodriguez, and asked him to sign them. Rodriguez said that he was going read them before he signed them.  At that point Medina instructed Rodriguez to get out of his vehicle, which he did.  Medina then began yelling and spitting on Mr. Rodriguez.   When Mr. Rodriguez moved backward to avoid being spat upon, Medina struck him, knocked him to the ground, and arrested him.  When Rodriguez made a formal complaint, Medina gave a sworn statement of the incident denying Rodriguez's allegations.  Unfortunately for Officer Medina the entire incident was captured on a nearby business's security

camera.  The security video proved that Medina's version in his sworn statement was false.

31.   On October 15, 2015, Hialeah police officer Castellon responded to a complaint of a loose dog in a residential neighborhood.  Castellon shot and killed the dog with his service firearm.  As result of the discharge of his firearm while on duty, Castellon's supervisor went to the scene.  Castellon reported that he shot the dog because the dog had bitten him on the ankle.  Fire rescue responded, examined Castellon, and found no evidence of any injury or other sign of a dog bite. Castellon refused any medical treatment.  The Department generated an Excessive Use of Force report as a result of this incident but otherwise took no action.

32.   On February 4, 2012, several Hialeah police officers were dispatched to a so-called "gentlemen's club" in Hialeah due to a fight and discharge of a firearm.  On arrival, one Jose Mejia was arrested on charges of disorderly intoxication, obstruction of justice, and violation of probation.  Mejia alleged that once arrested and placed in the back of a police car, a Hialeah Sergeant took him out of the police car and began punching and kicking him.  Mejia further alleged that before the arrest, a "big, bulky police officer" tackled him and held a gun to his head telling him that he would be shot if he moved.  After being arrested, Mejia claimed that the police took him to the parking lot of a nearby Home Depot, where the aforementioned Sergeant took him out of the car and, while still handcuffed, threw him to the ground, kicked him repeatedly, put his foot on Mejia's neck, and called

him names with racial slurs.  This incident generated an Excessive Use of Force report by the Department but otherwise took no action

33.  On an unknown (because it is not stated in the Department's Internal Affairs Report) date in late 2012, a minor, W.P., was arrested by Hialeah officer Medina (the same Medina mentioned in ¶ 30, *supra*) for alleged disorderly conduct and resisting arrest without violence. W.P. and some friends had gone to a Taco Bell in Hialeah after attending a party.  W.P. parked his car at a McDonalds next to the Taco Bell.  As he was leaving, he observed a police car with its lights off approach him.  W.P. yelled to his friends; immediately thereafter a policeman, Medina, appeared pointing his gun at him.  W.P. said that when he saw the officer, he immediately got on the ground.  W.P. further said that Medina then forcible put his knee on his back causing injury to his jaw and temple.  Medina then placed his hands on W.P.'s face and dug his fingers into his eye causing rupture of blood vessels in his eyeball.  W.P. provided the investigator with photographs from his cell phone of his face and injuries having the date of the arrest.  W.P. also was able to pick out Medina's photograph from the departmental photo album.

34.  On June 12, 2012, a Ms. Hernandez was visiting with friends in Hialeah. Apparently, an argument broke out and someone, presumably a neighbor, called the police.  Two Hialeah police officers responded.  By then, Ms. Hernandez and her friends were leaving the home.  However, the two officers stopped their vehicle as they had seen the vehicle leaving the scene of the alleged altercation.  Ms. Hernandez and one of the officers got into a verbal altercation because Ms. Hernandez believed there was no reason to stop them.   According to Ms.

Hernandez and witnesses, one of the officers grabbed her by the neck and threw her to the ground.  Witnesses present told the officers that Ms. Hernandez was 4 months pregnant.   One of the officers nevertheless fired his Taser, striking Ms. Hernandez while she was on the ground.  Ms. Hernandez was transported to Jackson Memorial Hospital for treatment due to being tazed while pregnant.  Later, Ms. Hernandez proved not to be pregnant, but the police officer who tazed her believed, or had reason to so believe, at the time he fired his Taser at her, that she was pregnant.  This officer, N. Lopez, is noted to have a prior sustained similar complaint for battery.  No action was taken by the Department against any of the officers involved.

35.    A minor, C.D., was arrested in his home by Hialeah police officer Barbaro Hernandez during late 2012 for possession of narcotics.   C.D. alleged that Hernandez arrested him, handcuffed him, and placed him in the back of a police vehicle.  While he was so situated, Hernandez opened the door to the police vehicle and told him "you know that you are going to have to pay for calling me an (expletive) because as a man you need to respect me in the streets."  Hernandez then removed the handcuffs and asked, "Are you going to say you're sorry?"  C.D. refused to apologize.  Hernandez then instructed C.D. to put his hands down.  C.D. refused and Hernandez slapped him twice in the face.  C.D. reported that there were two or three other Hialeah police officers present who witnessed the incident, but did nothing.  C.D. said that that two of the other police officers were standing in positions to as to block the view of others in the area so that no one else could witness the incident.  Hialeah Internal Affairs conducted an investigation.  The

Hialeah IA investigation indicates that none of the officers present at the time corroborate C.D.'s allegations.   Subsequently, however, a Hialeah Sergeant verified that he observed an injury on C.D.'s face, and an ID Tech who photographed C.D.'s face confirmed the presence of injuries on the left cheek where C.D. said he was struck by Hernandez, and confirmed that the skin was broken but not bleeding at the time.  The investigating officer contacted Hernandez after this disclosure by the ID Tech, but he refused to provide further statements. Although an IA report was prepared, corroborating witnesses gave statements, and Hernandez refused to cooperate further, no further action was taken by the Department.

36.  On May 20, 2013, a Ms. Reyes, a resident of Hialeah, called the Department because of a domestic disturbance between her brother and her mother.  Two Hialeah police officers responded.  The police told her that because her mother contradicted her claims, there was nothing they could do.  Nevertheless, officer Beato stated that if his brother was beating up his mother, he would take it upon himself to teach his brother a lesson.  At that, Ms. Reyes approached the car in which her brother was seated and struck it with her hand.  Officer Beato then grabbed her by the neck and threw her against the car resulting her knee striking the bumper, injuring her.   The officers permitted her mother and brother to leave the scene in their car and threatened Ms. Reyes with arrest.  However, the officers left the scene without taking any action.  This incident was reported to Department, which conducted an excessive use of force investigation, but took no action.

37.     On May 13, 2011, Mr. D. Rivero was arrested by Hialeah Sergeant Yan Perez for alleged aggravated assault on a police officer with a motor vehicle.  The charges were eventually dropped.  But, in an astonishing circumstance, , after conducting an IA investigation of Rivero's allegations of Perez's use of excessive force and battery against Mr. Rivero, the Department found that no action was warranted against Sergeant Perez.  The specific allegations by Mr. Rivero, corroborated by his girlfriend who was a witness and also was arrested, involve a traffic court hearing on the date in question arising from a prior traffic citation given by Perez to Rivero's girlfriend.  Rivero and his girlfriend appeared for the traffic hearing, but when the case was called, Perez dismissed the citation.  As the parties were walking outside of the courthouse, Perez approached the couple and demanded that they thank him for dismissing the charges.  Perez began using profanity when Rivero and his girlfriend refused to acknowledge him.  Rivero and his girlfriend left the courthouse in their vehicle but soon noticed that Perez was following them.  Nervous that Perez was following them, Rivero failed to come to a complete stop at a stop sign and was subsequently pulled over by a City of Miami police officer.  Perez also pulled over behind the City of Miami police vehicle.  Rivero heard Perez telling the City of Miami police officer that he would serve as a witness to Rivero's infraction.  After the citations were issued, Rivero left, but again shortly after leaving the scene where he received the citation for running the stop sign, he again noticed that Perez was following.  Rivero tried unsuccessfully to lose Perez by turning onto the Jackson Memorial/University of Miami campus.  Shortly thereafter, Perez again stopped Rivero and his girlfriend and ordered them  out of the car.  At

the time, Rivero's girlfriend was on her cell phone with Miami-Dade County Police who told her that an officer was on the way to their location.  Perez approached Rivero's vehicle and ordered him to "get the f**k out of the car."  This command was recorded and verified by the City of Miami Police Department Communications Recording.  Rivero, and ultimately his girlfriend, both complied with Perez's orders. Perez arrested Rivero for an alleged battery on a police officer.  Once at the police station, Rivero and his girlfriend were taken inside and sat down in the roll call room, with the girlfriend with her back to a large glass window and Rivero to her right about 5 feet away.  While paperwork was being done, Perez approached Rivero, who was still handcuffed behind his back, and picked him up by his hair. Perez then punched Rivero in the chest, struck the back of his neck when he was doubled over, and then body slammed him to the ground several times.  While on the ground, Perez kicked Rivero several times in the ribs.  Rivero complained of inability to breathe at which point Perez picked up Rivero and slammed him back into his chair.  It is worth noting that Perez had three prior complaints, two for excessive force and one for improper procedure.  This incident generated an Internal Affairs investigation resulting in no action being taken against Perez.  The Disposition section of the report, signed by the Chief of Police, indicates that Perez should be counseled for using "cuss words."  It should be further noted that Perez is now a Lieutenant in the Department.

38.     In addition to the foregoing, based on Plaintiff's counsel's Public Records requests to the City, the City has produced over 1000 pages of Excessive Use of Force complaints and investigative materials covering 2010 through 2017.  It is evident

from review of those records, some of which are summarized above, that the City and Department rarely, if ever, take any remedial or disciplinary action against their police officers.   In all of the Excessive Use of Force reports and documents produced by the City to Plaintiff's counsel, the City and Department never took disciplinary action against any officer, except for Officer Medina, who had multiple sustained complaints of excessive use of force. As result of the City's and Department's failure to act on many credible reports and complaints, the City and Department have created an atmosphere in its police force where officers believe that they are free to violate the civil rights of citizens without fear or concern of reprisal or consequences by the City or the Department.  This is a situation which this Court must not condone or permit to continue.

39.     Furthermore, based on Brady Reports from the State Attorney's Office received pursuant to public records requests, as of 2018 (this incident occurred in 2017) there were 15 open, unresolved excessive use of force investigations involving shootings by City of Hialeah officers, including at least 4 officers involved in the incidents above. (See Exhibits B & C attached hereto.)

### COUNT I – VIOLATION OF CIVIL RIGHTS UNDER § 1983 AGAINST THE CITY

40.     Mrs. Perez re-alleges the allegations of paragraphs 1-39, *supra*, and incorporates them as if stated herein in full.

41.     At all times material hereto, Defendant City permitted, tolerated, and caused a pattern or practice of unjustified and dangerous high speed chases and excessive, unjustified, unreasonable, and/or illegal use of force against members of the public by police officers of the Defendant City. Although such acts were improper, police

officers involved were not prosecuted and/or disciplined and/or retrained. In fact, some of said incidents were covered up with official claims that the police officers' acts were justified and proper. As a result, the City's police officers, including the individual Defendants who chased and shot Machado, were caused and encouraged to believe that members of the public could be subjected to illegal use of force and high speed chases and that such illegal conduct would be permitted by the City.

42.   In the instant matter, the individual police officers named acted at all times material hereto under color of law and within the course and scope of their employment as an officer of the Department.

43.   A reasonable officer standing in the shoes of the named individual defendants and confronted with the same circumstances would believe that <u>no force</u>—much less deadly force—was necessary in the situation.  At the time he was shot, Machado brandished no weapon and posed no threat to the safety of the officers, himself, or others.

44.   The City was responsible for following and implementing all relevant laws, rules, regulations, and policies with regard to screening, hiring, retaining, training, supervising, controlling, disciplining, and assigning to duties the officers of the Department.

45.   The City was deliberately, callously, or recklessly indifferent to the rights of individuals, particularly Machado, in that it instituted a custom or policy of negligently, recklessly, or willfully failing properly to screen, hire, retain, train,

supervise, control, discipline, and assign to duties the officers of the Department, notwithstanding the frequency of incidents of excessive use of force.

46.     The Department and the City had a custom or practice of engaging in use of excessive force, including lethal force when the circumstances called for less-than-lethal force or no force, against individuals such as Machado.

47.     The Department and the City had a custom or practice of engaging in unjustified high speed chases and using excessive force, including lethal force when the circumstances called for less-than-lethal force or no force, when alternative means of handling the situation were available.

48.     The Department and the City failed by custom or practice to have any effective policy or procedure to prevent improper high speed chases and the use of excessive force against individuals such as Machado.

49.     The City failed to determine whether members of the Department, particularly the individual defendants named herein, posed a threat to the public as a result of their officers' propensity to commit unlawful acts and to engage in violent activity.

50.     The Department and the City acted with deliberate, callous, or reckless indifference to the constitutional rights of Machado.

51.     The City knew or should have known that its deliberate, callous, or reckless indifference foreseeably would result in injury to members of the public, including Machado.

52.     In light of the excessive number and frequency of officer-involved incidents of excessive use of force, including shootings, the need for the City to train or retrain

officers on the use of force and to investigate and discipline officers involved in such incidents was obvious.

53. Despite its knowledge of the dangerous propensities of the members of the Department, including the individual defendants herein, the City failed and refused to remove such members of the Department from their positions as police officers, failed and refused to take meaningful disciplinary action against such members of the Department, and failed to provide redress for members of the public, such as Machado, who have been injured thereby.

54. The City, through its deliberate, callous, or reckless indifference, failed to ensure that the members of the Department, particularly the individual defendants, while acting within the course and scope of their employment and while acting under color of law, would not violate the constitutional and statutory rights of the public, including Machado.

55. The Department, through its officers, maintained a custom or policy of using excessive force and engaging in unjustified and dangerous high speed chases.

56. The City caused, permitted, and tolerated a pattern or practice of unjustified, unreasonable, unlawful, and excessive use of force and police instigated high speed chases against members of the public by officers of the Department, and failed to prosecute, discipline, or train the officers involved, causing and encouraging the members of the Department to believe that individuals could be subjected to the use of excessive force and that police officers could engage in unjustified and dangerous high speed chases, and that the City would permit and protect such conduct.

57.   The above-described conduct represents a pattern or practice by which members of the public were injured or killed by the intentional and/or reckless misconduct of the City's police officers and/or that serious incompetence or misbehavior was widespread throughout the Department.

58.   The City established and maintained a system of reviewing incidents and complaints of abuse of authority, such as, *inter alia*, the excessive use of force by members of the Department, that failed to identify the abuse of authority and use of excessive force as such and failed to subject the officers involved to appropriate supervision, discipline, and training, so that it has become the custom, policy, pattern, or practice of the City to encourage and tolerate such abuse of authority and use of excessive force.  Of over 1,000 use-of-force incidents reviewed, the Department found less than 3% to be sustained.

59.   The City, through the Department, has maintained a longstanding, wide spread history of failing properly hire, train, supervise, and/or discipline its officers for, *inter alia*, illegal use of force, even though there has been repeated, widely publicized notice of the unlawful and improper conduct of its employees.

60.   The above referenced acts, omissions, policies, and customs of the City caused its police officers, including the individually named defendants, to believe that such acts of improper use of force and improper high speed chases would not be properly monitored by supervisory officers, and would not be properly investigated or sanctioned, but instead would be tolerated. The foreseeable result of these acts, omissions, policies, or customs is that officers, like the individually name defendants, were more likely to use improper or excessive force.

61.   The actions of the Department and the City violated Machado's clearly established, well-settled, and constitutionally protected rights to not be deprived of his life, to not be deprived of his liberty without due process of law, and to be free from the use of excessive, unreasonable, and unjustified force against his person.

62.   Machado was a victim of such abuse of lawful authority and Defendants' illegal acts were the direct result of the above-described acts, omissions, policies, or customs of the City.

63.   As a direct and proximate result of the deprivation of his constitutionally protected rights, Machado lost his life and incurred damages, including physical pain and suffering and emotional trauma and suffering.

64.   The Plaintiff, Perez, as the Personal Representative of the Estate of Lester Jesus Machado, claims damages for the Machado's wrongful, including but not limited to the loss of his income, net accumulations, funeral expenses, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice, as well as physical pain and suffering and emotional trauma and suffering.

**WHEREFORE,** the Plaintiff, Yoslaisy Perez, as the Personal Representative of the Estate of Lester Jesus Machado, prays that this Honorable Court enter judgment against the Defendant, CITY OF HIALEAH, for violating 42 U.S.C. § 1983, declare the acts of the CITY OF HIALEAH violative of Lester Jesus Machado's constitutionally protected rights, award compensatory damages, and award attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), along with any and all other relief the Court deems proper and just.

**COUNT II – VIOLATION OF CIVIL RIGHTS UNDER § 1983 AGAINST Antonio Luis, Teannie Hernandez, Maria Benitez, Lorenzo Rodriguez, James Burke, Jose Pico, Jose Abel, Adrian Vidal, Daniel Garcia, Esteban Holland, Felix Elias, and Daniel Gato**

65.    Perez re-alleges the allegations of paragraphs 1- 39, *supra*, and incorporates them as if stated herein in full.

66.    When Luis, Hernandez, Benitez, Rodriguez, Burke, Pico, Abel, Vidal, Garcia, Holland, Elias, and Gato chased, accosted, shot, and killed Machado, they subjected Machado to the deprivation of clearly established rights, privileges, and immunities secured by the Constitution and laws of the United States, including the right to not be deprived of life and liberty without due process of law and the right to be free from the use of excessive force against his person.

67.    The named officers' conduct was committed with deliberate, callous, or reckless indifference to Machado's constitutional rights.

68.    Any reasonable officer standing in the shoes of the named officers would have known that their conduct foreseeably would result in the deprivation of Machado's constitutional rights.

69.    Alternative means, other than a high speed chase through the City and county, and the use of lethal force, were available to handle the situation.  Specifically, there was no reason in the first place to initiate a chase of Machado because Machado was stopped for a simple traffic infraction; at that time, the officer who stopped him, had his automobile tag number from which Machado's identification and location of home was easily discernible.  Initiating a chase under these circumstances was in violation of clearly established Departmental policy.  Furthermore, during the chase, a Hialeah Sergeant ordered the chase to be discontinued.   However, Luis, a Lieutenant in the Department, wrongfully

countermanded that Sergeant's order to stop the chase, which was also a violation of a clearly established policy of the Department.

70. There was at stake no governmental interest in the named officers' interaction with Machado: Machado was not a threat to the officers, himself, or others; Machado was not actively resisting arrest; Machado made no threatening moves; Machado was not fleeing at the time he was shot as his vehicle had crashed.

71. As a direct and proximate result of the deprivation of his constitutionally protected rights, Machado lost his life and incurred damages, including physical pain and suffering and emotional trauma and suffering.

72. The Plaintiff, Perez, as the Personal Representative of the Estate of Lester Jesus Machado, claims damages for the wrongful death of Machado, including but not limited to the loss of his income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice, as well as physical pain and suffering and emotional trauma and suffering.

**WHEREFORE,** the Plaintiff, Yolaisy Perez, as the Personal Representative of the Estate of L:ester Jesus Machado, prays that this Honorable Court enter judgment against the Defendants, Jose Abel, Adrian Vidal, Daniel Garcia, Esteban Holland, Felix Elias, and Daniel Gato, for violating 42 U.S.C. § 1983, declare their acts violative of Lester Jesus Machado's constitutionally protected rights, award compensatory damages, award punitive damages, and award attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), along with any and all other relief the Court deems proper and just.

## <u>COUNT III – WRONGFUL DEATH AGAINST THE CITY</u>

73.     Perez re-alleges the allegations of paragraphs 1-39, *supra*, and incorporates them as if stated herein in full.

74.     This is an action for damages brought pursuant to the Florida Wrongful Death Act, sections 768.16 to .26, Florida Statutes, and section 768.28, Fla. Stat.

75.     Perez has been, or will be named Personal Representative of Lester Jesus Machado's Estate.

76.     The survivors in this wrongful death action are Machado's mother, Perez, and Machado's father, Juan Machado.

77.     At all times material hereto, Defendants Luis, Hernandez, Benitez, Rodriguez, Burke, Pico, Abel, Vidal, Garcia, Holland, Elias, and Gato were agents, servants, or employees of the City, acting within the course and scope of their employment.

78.     At all times material hereto, the named officers illegally chased and/or used their firearms with the knowledge, consent, and permission of the City.

79.     Police officers have a common-law duty to exercise reasonable care in carrying out their law-enforcement responsibilities.

80.     The named officers breached that duty by using their firearms in a careless and negligent manner so as to legally, directly, and proximately cause the wrongful death of Machado.

81.     A reasonable officer standing in the shoes of the named officers and confronted with the same circumstances would believe that it was not necessary to engage in a high speed chance and that no force—much less deadly force—was necessary in the situation.

82.     Alternative means of handling the situation were available to the named officers.

83.  As a direct and proximate result of the breach of duty by the named officers, Machado was killed.

84.  As a further direct and proximate result of the breach of their duties by the named officers, Perez suffered damages, including the loss of Machado's support and services, mental pain and suffering, and funeral and burial expenses; the Estate of Lester Jesus Machado suffered the loss of prospective net accumulations.

85.  The City is vicariously liable for the actions and omissions of the named officers, who were acting within the course and scope of their employment when they shot and killed Machado.

**WHEREFORE,** in light of the foregoing, the Plaintiff, Yolaisy Perez, as the Personal Representative of the Estate of Lester Jesus Machado, prays that this Honorable Court enter judgment against the Defendant, CITY OF HIALEAH, and award damages for loss of support and services, mental pain and suffering, funeral and burial expenses, and lost prospective net accumulations, along with all other relief the Court deems proper and just.

## COUNT IV – WRONGFUL DEATH AGAINST ANTONIO LUIS, TEANNIE HERNANDEZ, MARIA BENITEZ, LORENZO RODRIGUEZ, JAMES BURKE, JOSE PICO ,JOSE ABLE, ADRIAN VIDAL, DANIEL GARCIA, ESTEBAN HOLLAND, FELIX ELIAS AND DANIEL GATO.

86.  Perez re-alleges the allegations of paragraphs 1-39, *supra*, and incorporates them as if stated herein in full.

87.  This is an action for damages brought pursuant to the Florida Wrongful Death Act, sections 768.16 to .26, Florida Statutes.

88.  Perez has been, or will be named Personal Representative of Lester Jesus Machado's Estate.

89. The survivors in this wrongful death action are Machado's mother, Perez, and Machado's father, Juan Machado.

90. Police officers have a common-law duty to exercise reasonable care in carrying out their law-enforcement responsibilities.

91. Luis, Hernandez, Benitez, Lorenzo Rodriguez, Burke, Pico, Abel, Vidal, Garcia, Holland, Elias, and Gato breached that duty when they illegally chased and shot Machado and killed him.

92. Reasonable officers standing in the shoes of the named officers and confronted with the same circumstances would believe that it was not necessary to chase Machado, and that no force—much less deadly force—was necessary in the situation.

93. Alternative means of handling the situation were available to the named officers.

94. The conduct of the named officers in interacting with Machado was committed in a manner exhibiting wanton and willful disregard of human rights and safety.

95. the named officers intentionally caused bodily harm or offensive contact to the person of Machado by shooting and killing him.

96. At no time did Machado consent to such offensive contact or bodily harm.

97. As a direct and proximate result the breach of their duty by the named officers, Machado was killed.

98. As a further direct and proximate result of breach of duties by the named officers, Perez suffered damages, including the loss of Machado's support and services, mental pain and suffering, and funeral and burial expenses; the Estate of Lester Jesus Machado suffered the loss of prospective net accumulations.

**WHEREFORE,** in light of the foregoing, the Plaintiff, Yolaisy Perez, as the Personal Representative of the Estate of Lester Jesus Machado, prays that this Honorable Court enter judgment against the Defendants, Antonio Luis, Teannie Hernandez, Maria Benitez, Lorenzo Rodriguez, James Burke, Jose Pico, Jose Abel, Adrian Vidal, Daniel Garcia, Esteban Holland, Felix Elias and Daniel Gato, and award damages for loss of support and services, mental pain and suffering, funeral and burial expenses, and lost prospective net accumulations, as well as punitive damages, along with all other relief the Court deems proper and just.

Dated this 30th day of September, 2019.

Respectfully submitted,

/s/ Domingo C. Rodriguez
Domingo C. Rodriguez, Esq. (F.B.N. 394645)
domingo@rlomiami.com
**Rodriguez Law Office, LLC**
95 Merrick Way, Suite 720
Miami, Florida 33134
Tel: (305)774-1477~Fax: (305)774-1075

and

Roberto E. Pertierra, Esq. (F.B.N. 616370)
robertopertierra@gmail.com
**Roberto E. Pertierra, P.A.**
2655 Le Jeune Road, Ste 1105
Miami, FL 33134
Tel: (305) 444-0011