UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-cv-24047-MGC

YOLAISY PEREZ,
  *Plaintiff*,
v.

CITY OF HIALEAH, e*t al.*,
  *Defendants*.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
CITY OF HIALEAH'S MOTION TO DISMISS**

  **COMES NOW,** the Plaintiff, Yolaisy Perez, by and through her undersigned counsel and pursuant to rule 7.1(c) of the Local Rules of the Southern District of Florida, and hereby files her Response in Opposition to Defendant City of Hialeah's Motion to Dismiss [DE 20], and states:

**I. Introduction and Background**

  1. "The very purpose of [42 U.S.C.] § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) (citations omitted).

  2. In the early morning of October 1, 2017, a City of Hialeah ("Hialeah" or the "City") police officer (co-Defendant Hernandez) initiated what should have been a routine traffic stop, setting in motion a series of events that, taken together, caused the unjust and untimely—and thoroughly avoidable—death of Lester Jesus Machado (the Plaintiff's son). (Compl. [DE 1] ¶ 24.)  During the stop, Machado left the scene. (*Id.*)  Hialeah police then began a high-speed vehicle chase, during which they shot at Machado at least once. (*Id.*)

  3. A sergeant called off the chase. (*Id.* ¶ 25.)  However, for reasons unknown, Defendant Luis countermanded the call-off order and continued the chase personally. (*Id.*)  Luis rammed Machado's vehicle with his own, causing Machado to lose control and to crash.

(*Id.*)  In spite of Machado presenting no risk of harm to anyone after crashing, Hialeah officers nonetheless unleashed a fusillade of bullets, senselessly killing Machado.  (*Id.*)

4. Perez, as personal representative of her deceased son's estate, has brought suit against the City and the officers involved.  Against the City, Perez brings claims for violation of civil rights under section 1983 (*id.* ¶¶ 40-64) and for wrongful death under Florida law (*id.* ¶¶ 73-85).  The City filed a Motion to Dismiss (the "Motion" or "Mot." [DE 20]), alleging that Perez has failed to state a claim against the City.  As explained herein, the City's Motion is due to be denied.

II. **Standard of Decision for Motions to Dismiss**

5. Rule 8 requires a short and plain statement showing that the claimant is entitled to relief.  Fed. R. Civ. P. 8.  A complaint must contain sufficient factual allegations to present a plausible claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  When deciding a motion to dismiss, a court must take as true all well-pleaded allegations in the complaint and view them and all reasonable inferences in the light most favorable to the plaintiff.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556, 570).  Pleadings must be construed liberally, "so as to do justice."  Fed. R. Civ. P. 8(e).  A complaint "survives a motion to dismiss 'even if it strikes a savvy judge that actual proof… is improbable[] and that recovery is very remote and unlikely.'"  *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1326 (S.D. Fla. 2012) (quoting *Twombly*, 550 U.S. at 556).  Any doubts about the sufficiency of a complaint must be resolved in the plaintiff's favor.  *Olson v. Barrett*, No. 6:13-cv-1886-Orl-40KRS, 2015 WL 1277933, at *5 (M.D. Fla. Mar. 20, 2015) (citing *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994)).

III. **Argument**

   A. Count I States a Claim for Municipal Liability under *Monell*

6. Municipalities may be held liable for civil rights violations under section 1983 when an official policy or governmental custom causes the deprivation at issue.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  Whether based on official policy or unofficial custom, for liability to attach, the policy or custom must be the "'moving force behind the constitutional deprivation.'"  *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985) (internal quotation and citation omitted)).  "The Supreme Court has defined… 'custom' to include 'persistent and

wide-spread… practice…' and 'deeply embedded traditional ways of carrying out policy.'" *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

          1.     *Perez Alleged a Pattern or Practice of Civil Rights Violations*

7.     The City contends that Perez failed properly to allege sufficient, similar past incidents. (Mot. [DE 20] at 4-5.) Specifically, the City complains that none of the incidents Perez alleged to show a pattern or practice involved high speed chases or shootings. (*Id.* at 4.) The City relies heavily on *Gold v. City of Miami*, 151 F.3d 1346 (11th Cir. 1998).

8.     The City's reliance on *Gold* is misplaced. In *Gold*, after making a brief comment regarding what he felt was Miami police failing properly to do their duty, the plaintiff was arrested for disorderly conduct. 151 F.3d at 1348. The plaintiff was placed in handcuffs, allegedly too tightly, resulting in minor injury. *Id.* The plaintiff brought suit against the City of Miami for false arrest under state law and, as federal claims, violation of civil rights by the use of excessive force and arrest without probable cause. *Id.* at 1347. The case was tried to a jury, which returned a verdict for the plaintiff. *Id.* The Eleventh Circuit reversed as to the federal claims, holding that the plaintiff had failed to present evidence of a pattern or practice on the part of the City of Miami. *Id.* at 1349.

9.     Here, the City argues that Perez, like the plaintiff in *Gold*, failed to plead sufficient facts of a pattern or practice to support municipal liability. (Mot. [DE 20] at 5.) The City contends that Perez has not alleged any prior incidents relating to high speed chases or shootings. (*Id.*) The City also complains that Perez has not proved that the complaints of police misconduct she did allege had merit. (*Id.*) The City misrepresents both the facts here pleaded and the facts of *Gold*.

10.     Perhaps the simplest distinction between *Gold* and this case is their differing procedural postures. *Gold* was an appeal after trial and jury verdict. 151 F.3d at 1347. The matter *sub judice* is at the pleading stage, with the Court deciding motions to dismiss. The discussion in *Gold* about establishing the merits of prior complaints of police misconduct was not a commentary on the plaintiff's evidence; it could not have been, because the plaintiff there presented no evidence of prior complaints. *See id.* at 1351. Instead, the Eleventh Circuit was discussing the requirement of notice of misconduct for imposing municipal liability and the importance of proof of meritorious complaints to establish such notice. *Id.* That failing to prove meritorious prior complaints to establish the requisite notice to the municipality

would be relevant to a case tried to a jury (both *Gold* and the case to which it cites, *Brooks v. Scheib*, 813 F.2d 1191, 1192 (11th Cir. 1987), were appeals after a jury verdict) does not impose a requirement of proof on this case at this stage. At the pleading stage, what may eventually be proved to the jury is not the question. Perez has alleged incidents of prior police misconduct involving the use of excessive force.

11. The plaintiff in *Gold* sued, as relevant here, for excessive force and arrest without probable cause. 151 F.3d at 1347. The City of Miami conceded that the arrest lacked probable cause. *Id.* at 1348. With respect to his claim for excessive force, the *Gold* plaintiff did not present evidence of a pattern or practice of use of excessive force. *Id.* at 1351. Instead, he presented evidence of the number of arrests for disorderly conduct—without any evidence of false arrests or other constitutional violations. *Id.* The Eleventh Circuit held that this simply was insufficient evidence that the City of Miami had the notice needed for municipal liability. *Id.* at 1354.

12. In contrast, Perez here pleaded detailed factual allegations of prior incidents of the use of excessive force. (Compl. [DE 1] ¶¶ 27-37.) She further discussed more than 1,000 pages of excessive force complaint documents (in which the City took corrective action only once) and *Brady* reports prepared by both the City and the State Attorney's Office. (*Id.* ¶¶ 38-39.) The City complains that none of Perez's allegations of prior misconduct involve high speed chases or shootings. (Mot. [DE 20] at 5.) The gravamen of the claims presented, however, is police use of excessive force. The City had notice of widespread constitutional violations by its officers, but took no remedial action—whether by re-training, better supervision, or discipline. Because the City took no action notwithstanding its notice of its officers using excessive force, that pattern took the force of a custom or practice of the City itself. Officers continue to use excessive force because they know—as shown by the City's pattern or practice—that there will be no consequences from the City for the unconstitutional use of excessive force. Perez has pleaded allegations of prior misconduct sufficient to show that the City had or should have had the notice required for municipal liability.

   2. *The City Miscomprehends Perez's Allegations of Inadequate Training*

13. The City takes issue with Perez's claims of inadequate training and hiring. (Mot. [DE 20] at 6-8.) The City contends that Perez seeks merely to allege that there is a training program, amounting to a policy for which the City is responsible. (*Id.* at 6.) The City

further asserts that it is the State of Florida, not the City, that sets minimum certification requirements for police officers. (*Id.* at 6-7.) And the City contests any claim for inadequate or improper hiring. (*Id.* at 8.)

14.     The City's contentions regarding inadequate hiring and the entity that sets minimum standards easily are dismissed. Although the Complaint does refer to deficiencies in the City's hiring process, Perez is not at this time presenting a claim addressing the City's hiring practices. The City's protestation that the State sets the minimum requirements for police officer certification and continuing training is not relevant. Perez does not allege that the City furnished individuals who lacked the proper certification with badges and guns and set them loose on the public. Instead, Perez claims that, notwithstanding notice of its officers' use of excessive force, the City did not subject its officers to additional training on the use of force, to better supervision, or to discipline.

15.     Rather than merely allege the existence of a training program and assert that such program thus is a policy for which the City is liable, Perez claims that the City's failure to train, supervise, or discipline its officers, in the face of its notice of use of excessive force, is deliberate indifference to the rights of those with whom the City's officers come into contact. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). Having notice of complaints of the use of excessive force by its officers, and failing to take remedial action, the City disregards the known or obvious consequences: police having a sense of impunity resulting in yet more incidents of excessive force, such as occurred in this case. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).

16.     The City contends that Perez fails to allege specific training deficiencies. (Mot. [DE 20] at 7.) Perez does allege prior incidents, in response to which the City took no action. (Compl. [DE 1] ¶¶ 27-39.) After reviewing more than 1,000 pages of officer complaint documents, Perez alleges that the City took action only once, and, moreover, that at least four of the officers involved in the events giving rise to this case were involved in pending excessive force investigations. (*Id.* ¶¶ 38-39.) At least two of the officers mentioned in Perez's allegations of prior misconduct were involved in more than one reported incident. (*Id.* ¶¶ 28 & 25, 30 & 33.) Several of the incidents were viewed by witnesses, including other officers. As stated previously, the training deficiency alleged is the City's failure to re-train, supervise,

or discipline its officers in the incidents alleged, notwithstanding its notice of the officers' use of excessive force.

### B. Count III States a Claim for Wrongful Death

17. "[A] Florida municipality may be liable in *respondeat superior* or the tortious conduct of its employees." *Shehada v. Tavss*, 965 F. Supp. 2d 1358 (S.D. Fla. 2013) (citing Fla. Stat. § 768.28 (limited waiver of sovereign immunity); *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123-24 (Fla. 4th DCA 1987)). Florida's limited waiver of sovereign immunity applies only to operational (as opposed to discretionary) functions. *Kaisner v. Kolb*, 543 So. 2d 732, 737 (Fla. 1989). Operational functions are those that are "not inherent in policy or planning but merely reflect[] a secondary decision as to how those polices or plans will be implemented." *Shehada*, 965 F. Supp. 2d at 1376 (citing *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1118 (11th Cir. 2005)). There can be no question that the officers who shot Machado were carrying out an operational function as their actions do not involve policy or planning, but rather implementation. *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1264 (11th Cir. 2001) (quoting *Kaisner*, 543 So. 2d at 737) ("decision as to whether use of a firearm is necessary is 'not necessary to or inherent in policy or planning,' and 'merely reflects a secondary decision as to how those policies or plans will be implemented'"). The City is thus not shielded by sovereign immunity in Perez's state-law claim.

18. Nonetheless, the City contends that Perez fails to state a claim in her count for wrongful death under Florida law. (Mot. [DE 20] at 8-10.) The City argues that there is no cause of action for negligent use of excessive force. (*Id.* at 8-9.) The City also asserts sovereign immunity. (*Id.* at 9-10.) Neither argument is availing.

19. The City employs a strange reading of the Complaint in an attempt to avoid liability for Machado's death at the hands of the City's officers. (*Id.* at 8.) According to the City, because Perez alleged in her preliminary allegations that "the City's 'negligent use of excessive force' resulted in violence against Machado," there can be no claim for wrongful death against the City. (*Id.* (citing Compl. [DE 1] ¶ 9.)) The City's representation of the Complaint is intentionally misleading. What Perez actually alleged was:

> This suit asserts that the Defendants acted illegally, improperly, and negligently in that the acts or omissions of the City, its police department, and its police officers, [sic] created an atmosphere of hostility and violence against citizens, including Machado, [sic] by

> among other things, [sic] negligent use of excessive force, intentional use of excessive force, conducting improper high speed chases involving police vehicles, and failing to take remedial action in the face of substantial evidence of a pattern or practice of excessive use of force by City police officers.

(Compl. [DE 1] ¶ 9.) The City's selection of one phrase in an introductory paragraph incorporated into the claim for wrongful death does not mean that Perez has failed to state a claim. There is nothing inconsistent in Perez's pleading. And even if there were, pleading in the alternative is permitted. *See, e.g., Arcade Steam Laundry v. Bass*, 159 So. 2d 915, 917 (Fla. 2d DCA 1964). According to the City, the Complaint must be dismissed because Perez alleges that the officers negligently committed an intentional tort, but there is no cause of action for the negligent commission of an intentional tort. (Mot. [DE 20] at 8-9.) This argument ignores the specific allegations of Count III. In Count III, Perez alleges that the officers were acting within their employment as police officers for the City (Compl. [DE 1] ¶ 77), that the officers had a duty of reasonable care in carrying out their police duties (*id.* ¶ 79), that they carelessly and negligently breached their duty, causing Machado's death (*id.* ¶ 80), and that the City is vicariously liable for the actions of the officers (*id.* ¶ 85). Much as the City may wish to recast Perez's wrongful-death allegations and lash them to the claims for excessive force, that desire cannot change what Perez actually alleged in the Complaint.

20. Similarly, the City seeks to impart a gloss to imply that Perez alleges in Count III that the officers acted with malicious, willful, and reckless disregard for Machado's human rights and safety. (Mot. [DE 20] at 9-10.) The problem, of course, is that Perez makes no such allegation or in the introductory allegations she incorporates therein. The words "malicious," "willful," and "reckless" <u>do not</u> appear in Count III nor in the introductory allegations. The closest it comes is in paragraph 14, where Perez alleges deliberate indifference, but that term is clearly applicable to the section 1983 claims. (Should the Court find the deliberate indifference allegation from the introductory paragraphs too much, Perez would certainly be amenable to amending Count III to clarify that paragraphs 1 to 39, except paragraph 14, are incorporated.)

IV.  **Conclusion**

21. The City's Motion should be denied. The City has not shouldered its burden on moving to dismiss. Perez states a claim for municipal liability for violations of civil rights

under *Monell* and for wrongful death based on *respondeat superior* under Florida law. Should the Court agree with any of the City's arguments, any dismissal should be without prejudice. *See, e.g.*, *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1245 (S.D. Fla. 2015) (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)).

Dated January 16, 2020.                    Respectfully submitted,

/s/ Domingo C. Rodriguez
Domingo C. Rodriguez, Esq. (FBN 394645)
domingo@rlomiami.com
**RODRIGUEZ LAW OFFICE, LLC**
95 Merrick Way, Suite 720
Coral Gables, Florida 33134
Tel: (305)774-1477 ~ Fax: (305)774-1705

Roberto E. Pertierra, Esq. (FBN 616370)
robertopertierra@gmail.com
**ROBERTO E. PERTIERRA, P.A.**
2655 LeJeune Road, Suite 1105
Coral Gables, Florida 33134