# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 19-24047-CIV-COOKE/GOODMAN

YOLAISY PEREZ,

      Plaintiff,

v.

CITY OF HIALEAH, et al.,

      Defendants.

_____/

## ORDER ON PLAINTIFF'S MOTION
## FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff Yolaisy Perez wants to file an amended complaint to add eight new defendants and three additional causes of action in this lawsuit arising from the October 1, 2017 fatal shooting of her son (Lester Machado) by Hialeah police officers. Perez filed her motion for leave [ECF No. 119] approximately eight months after the deadline to amend expired, more than two weeks after fact discovery closed, and after the parties took the depositions of fifty-five (55) witnesses.

Perez says she has established good cause for this after-the-deadline request because discovery uncovered evidence of a massive police cover-up. She argues that she could not have learned about this purported cover-up before depositions and discovery. She says lack of diligence is not a factor here.

Defendants, the City of Hialeah and many current and former police officers, object to the motion. They contend that Perez was not diligent. For example, they highlight the fact that she did not start to propound discovery until August 2020, the month before expiration of the deadline to amend, even though she filed her lawsuit in September 2019 (almost a year earlier). Defendants also argue that the proposed amendment would be futile because the proposed new claims fail as a matter of law.

They predict that the trial would be substantially delayed because each new defendant would have the right to re-do all of the 55 depositions and because there would be extensive motion practice concerning the viability of the proposed new claims. They caution that additional (albeit repeat) depositions could not proceed on a fast track because their attorneys' schedules cannot accommodate them in the next several months.

They also note that depositions of the eight new defendants would inevitably be taken and that experts would then amend or supplement prior opinions (based on information in the new and re-taken depositions) and that each side would then take a deposition of the other side's expert. Defendants also contend that an amended complaint (with substantial additional discovery) would postpone the filing and resolution of the individual officers' summary judgment motions based on qualified immunity.

United States District Judge Marcia G. Cooke referred [ECF No. 130] the motion to the Undersigned, and I held a 2.5-hour Zoom hearing on July 1, 2021.

For the reasons outlined below, I **deny** the motion.

## Factual and Procedural Background

Hialeah police officers fatally shot Machado on October 1, 2017. Perez, as presumptive personal representative of Machado, filed this lawsuit on September 30, 2019. The Complaint [ECF No. 1] alleges the following scenario:

On or about Sunday, October 1, 2017, at approximately 4:00 a.m., a police officer employed by the City of Hialeah, believed to be Defendant Teannie Hernandez, allegedly stopped Machado for a routine traffic violation near 22nd Street and 9th Avenue in Hialeah. For reasons unknown, Machado left the scene where the initial traffic stop took place. Thereafter, the Defendant police officers commenced a high-speed chase through the streets of Hialeah, shooting at Machado during the chase at least once.

The Complaint explains that Perez does not know if Machado was struck by a bullet during the chase. The high-speed chase continued until Machado crashed his vehicle near N.W. 79th Street and 35th Avenue, just outside Hialeah's city limits. At that time, unjustifiably and without provocation, the six police officers shot at Machado no less than 128 times, striking him multiple times, and killing him. Subsequently, the medical examiner removed seven 9mm projectiles from Machado's body.

During the chase, the Complaint says, a Hialeah Police Department Sergeant called off the chase via radio. However, Defendant Antonio Luis, a lieutenant, countermanded that order, and continued to pursue Machado in his own police cruiser, ramming Machado's vehicle from the rear and causing Machado to lose control of his

vehicle and crash into a Metrorail support column.

At that point, according to the Complaint, Machado's vehicle was stopped, Machado was unarmed, and Machado presented no risk of harm to anyone. For no apparent reason, the six officers named in the Complaint immediately and repeatedly shot Machado until he was dead. Perez contends that the Defendant officers' improper and unnecessary high-speed chase as well as the subsequent shooting at, and killing of, Machado is but one of many inappropriate incidents of excessive use of force by City police officers, including shootings in the City and involving the Department.

Perez asserted four Counts in her Complaint: (Count 1) Violation of Civil Rights, pursuant to 42 U.S.C. § 1983, against the City; (Count II) Violation of Civil Rights Under Section 1983 against individual police officers; (Count III) Wrongful Death against the City; and (Count IV) Wrongful Death against individual police officers.

Perez filed a notice of voluntary dismissal concerning Maria Benitez, and the Court dismissed without prejudice the case against her. [ECF Nos. 61-62].

The City moved to dismiss Counts I and III of the Complaint. In an August 24, 2020 Order, the Court granted in part and denied in part [ECF No. 76] the motion to dismiss. Specifically, the Court dismissed without prejudice Count III against the City.

Lt. Luis also filed a motion to dismiss [ECF No. 39], which the Court granted in part. [ECF No. 77]. Specifically, the Court dismissed Count IV without prejudice.

Before ruling on the motion to dismiss, the Court entered a trial scheduling Order

on June 16, 2020 [ECF No. 72], scheduling the case for the June 7, 2021 trial calendar and establishing a September 25, 2020 deadline for amended pleadings and/or adding parties and a December 28, 2020 deadline for fact discovery.

On August 28, 2020, attorney Richard Diaz filed a notice of appearance as co-counsel for Perez. [ECF No. 81].

On November 11, 2020, Defendants filed a motion to disqualify Diaz [ECF Nos. 91-92]. After extensive briefing and a hearing, the Undersigned entered an Order denying the motion on December 14, 2020. [ECF No. 114].

On April 30, 2021, Defendants filed a motion to enlarge certain pretrial deadlines. [ECF No. 117]. Defendants asked the Court to extend the deadline for filing responses to any dispositive or pretrial motions to 30 days and that the reply deadline be extended to 15 days. The Court granted that motion on May 4, 2021, extending certain deadlines. [ECF No. 118]. The new fact discovery deadline was set for April 27, 2021. The deadlines to amend pleadings and to complete fact discovery were not extended, however. The Court set the new trial calendar for October 25, 2021.

On May 12, 2021, Perez filed a motion for leave to file an amended complaint. [ECF No. 119]. The motion seeks to add eight new defendants and to assert three additional claims.

The motion alleges that "extreme good cause" for the proposed amended pleading has been established. Plaintiff says that her failure to seek leave to amend before the

deadline to do so expired "is not the result of any lack of diligence on her part and is, in fact, supported amply by good cause, namely a massive, complex and well-designed conspiracy to cover-up the bad chase and shooting only detectable via the 50 depositions and other discovery obtained in this case." [ECF No. 119].

The eight (8) proposed new defendants are: the City's public information officer (i.e., Hialeah Police Spokesperson Carlos Zogby) plus seven post-incident investigating officers (i.e., Off. Carlos Garcia, Det. Jose Elosegui, Det. Miguel Suarez, Det. Sgt. Marvin Alvarez, Off. Eddie Salazar, Frank Penate, and Sergio Ramirez) – none of whom were involved in the events preceding Machado's death.

Perez also seeks to assert (or reassert) three (3) additional causes of action: (i) a claim for Wrongful Death against the City (Count III), and against Lt. Luis (part of Count IV), both of which were previously dismissed by this Court in separate Orders on August 24, 2020 [ECF Nos. 76; 77]; (ii) a claim for Civil Conspiracy against all Defendants (Count V); and, (iii) a claim for aiding and abetting against all Defendants (Count VI). [ECF No. 119-1].

The motion does not say that Perez seeks to add additional *Plaintiffs*, and the proposed amended complaint attached to the motion does not add new Plaintiffs either. In fact, the proposed amended complaint lists only Perez as the named Plaintiff in the style of the case, refers throughout to only a singular Plaintiff and demands relief in each of the counts on behalf of only Perez (and solely and expressly in her status as personal

representative of Machado's estate). [ECF No. 119-1] But the last line of paragraph 23 of the proposed amended Complaint says that "Plaintiff also seeks damages for violation of her *own* constitutional rights – violation of her due process rights under the 14th Amendment." (emphasis added). *Id.*

Defendants filed an opposition response and Perez filed a reply. [ECF Nos. 122; 126].

In her reply, Perez argues that her attorneys forgot to add the two additional Plaintiffs (Perez, on her own behalf, and Juan Machado, Machado's son). [ECF No. 126]. She says that three separate law firms representing her all failed to notice this omission during the drafting, proofreading and revision process. *Id.* Her reply describes this as being "akin to a scrivener's error." *Id.* She argues that "this shortcoming can be corrected through interlineation before filing the amended complaint if leave is granted." *Id.*

United States Marcia G. Cooke referred the motion to the Undersigned. [ECF No. 130].

The motion contends that the purpose of the proposed amended Complaint is "to allege factually, in more detail, the facts of the case, and conspiracy to cover-up the shooting as justified, add two new counts and to add as new defendants conspirators previously unknown." [ECF No. 119]. The initial (and still-existing) Complaint is 27 pages. The proposed amended complaint is 91 pages.

Perez's motion lists nine circumstances (and one additional vague circumstance

which was not explained with specificity until the hearing), which she contends were revealed in extensive discovery and which demonstrate "the context for the depth and breadth of the cover-up the Plaintiffs have unearthed." [ECF No. 119]

Pursuant to a directive I issued at a multi-hour hearing, Defendants filed [ECF No. 139] a copy of a March 27, 2020 email exchange between Perez's counsel – in which Plaintiff's counsel advised that "there are not going to be any new parties for the reason we discussed."

At the hearing, Plaintiff's counsel said the representation about no new parties was based on the statute of limitations for wrongful death claims – and that there is a different, and longer, statute of limitations for the proposed new conspiracy claims. Thus, he says, the representation was accurate when made but is now outdated because the facts have changed (i.e., a different statute of limitations would now permit additional parties).

Information Obtained at the Hearing

As of now, there are three law firms representing the existing Defendants in this case:  one for the City, one for Lt. Luis and one for the remaining ten Defendants. The attorney representing the ten Defendants said he would not be representing any of the additional eight defendants should the Court permit the amended complaint. He predicted that four or five to eight additional defense attorneys would be involved in representing the new, proposed defendants if an amended complaint were to be permitted. He indicated that one new attorney could not safely represent all eight new

defendants because of conspiracy allegations in the proposed amended complaint.

Counsel for Lt. Luis and the attorney for the ten individual defendants advised that their schedules have been substantially affected by their involvement in this lawsuit. At bottom, they represented that the frenetic activity in the past four to five months has caused them to fall behind in their other cases and that they could not participate in a large-scale, expedited deposition schedule if the attorneys for the new defendants were to take depositions of the 55 witnesses who already gave depositions, and if additional depositions (of new defendants and experts with updated opinions) were taken. In addition, Lt. Luis' counsel explained that she is on seven trial calendars during the remainder of 2021 and would therefore need to focus her energies on those cases, rather than gearing up again to re-do all the depositions previously taken in this case.

In response to Defendants' comment that an amended complaint could lead to a two-year postponement of the trial date because the new defense attorneys might want to take all of the depositions again, Plaintiff's counsel advised that Plaintiff is willing to delay the trial as the price for obtaining leave to pursue the amended complaint. He also predicted that the delay would be less than two years.

**Applicable Legal Principles and Analysis**

Good Cause

Our appellate court succinctly and directly outlined the fundamental principles governing untimely motions to amend in *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418

(11th Cir. 1998):

> District courts are required to "enter a scheduling order that limits the time to ... join other parties and to amend the pleadings ..." Fed.R.Civ.P. 16(b). Such orders "control the subsequent course of the action unless modified by a subsequent order," Fed.R.Civ.P. 16(e), and may be modified only "upon a showing of good cause." Fed.R.Civ.P. 16(b). This **good cause standard precludes modification unless the schedule cannot "be met despite the diligence of the party seeking the extension.**" Fed.R.Civ.P. 16 advisory committee's note; *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992) ("If [a] party was not diligent, the [good cause] inquiry should end.") (emphasis added).

In *Sosa*, the Eleventh Circuit affirmed an order denying a motion to amend the complaint to add a second defendant. *Id.* The Court noted that Plaintiff's failure to comply with the trial scheduling order resulted from a lack of diligence. *Id.* at 1419. For example, the Court noted, Plaintiff there took no steps to acquire certain relevant information early in the discovery period, waited four months before propounding written discovery and took no oral depositions until nearly three months after expiration of the deadline to amend the complaint. *Id.* Moreover, the Court pointed out that some of the information supporting the proposed amendment was available to Plaintiff before she filed the lawsuit and that much of the information was public information which was "readily available" to Plaintiff. *Id.*

*Sosa* remains the law in this Circuit, and its rules continue to be cited. *See e.g., AMG Trade & Distribution, LLC v. Nissan North America, Inc.*, 813 Fed. Appx. 403, at *408 (11th Cir. 2020) (affirming order denying post-deadline motion for leave to amend and citing *Sosa* for the principle that "that 'the information supporting the proposed amendment to

the complaint was available to the plaintiff even before she filed suit' weighs against a finding of diligence."); *Harris v. Reverse Mortgage Solutions, Inc.*, 800 Fed. Appx. 708 (11th Cir. 2020) (affirming order denying widow's request to amend trial scheduling order and for leave to amend complaint to add two additional defendants because plaintiff had relevant evidence months before seeking leave and therefore did not meet the good cause standard); *Robertson v. Interactive College of Technology/Interactive Learning Systems, Inc.*, 743 Fed. Appx. 269 (11th Cir. 2018) (affirming order denying plaintiff's motion to amend his complaint for race discrimination and retaliation); *see also Southern Grouts & Mortars, Inc.*, 575 F.3d 1235 (11th Cir. 2009) (affirming order denying trademark owner's motion for leave to amend complaint and noting that plaintiff "dallied too long" because it waited to file its motion to amend "with information that it had known over a month before . . . .").

> Framed by these rules, the Eleventh Circuit standard is straightforward:

> When leave to amend is sought **after** the deadline to amend the pleadings has passed, the movant must do more than argue leave is due under Federal Rule of Civil Procedure 15(a)…. the movant must also show "**good cause**" under Federal Rule of Civil 16(b)(4) in order to obtain the right to amend.

*United States ex rel. Olhausen v. Arriva Med., LLC*, No. 19020190-Civ-Scola, 2021 WL 39557, at *3 (S.D. Fla. Jan. 5, 2021) (emphasis added) (citing *Sosa v. Airprint Sys., Inc.)*. "[A] plaintiff must establish good cause … before the Court may consider whether to grant leave to amend under Rule 15." *Havana Docks Corp. v. MSC Cruises SA Co.*, 455 F. Supp. 3d 1355, 1364 (S.D. Fla. 2020) (internal quotations omitted).

This good cause standard "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Id.* "[I]f the party seeking relief was not diligent, the **good cause inquiry should** *end*." *Id.* at 1365. (internal citations omitted) (emphasis added).

A district court's decision to enforce its pre-trial order will not be disturbed on appeal absent an abuse of discretion. *Sosa*, 133 F.3d at 1418.

**If** good cause is shown, then the Court moves to an analysis under Federal Rule of Civil Procedure 15. Under Rule 15, the grant or denial of an opportunity to amend "is within the discretion of the District Court." *Baez v. Banc One Leasing Corp.*, 348 F.3d 972, 974 (11th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

A court properly exercises its "broad discretion" to deny leave to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies . . ., undue prejudice . . ., [or] futility of amendment." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (quotation omitted); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). It is axiomatic that a court should not allow leave to amend pursuant to Federal Rule of Civil Procedure 15(a) when the party moving for amendment has exhibited: "undue delay, bad faith or dilatory motive on the part of the movant...[or] undue prejudice to the opposing party by virtue of allowance of the amendment, futility of [the] amendment...." *Foman v. Davis*, 371 U.S. at 182.

The Undersigned, therefore, needs to evaluate good cause, which necessarily

involves an assessment of diligence, which is the "key" to satisfying the good cause requirement. *De Varona v. Disc. Auto Parts, LLC*, 285 F.R.D. 671, 672–73 (S.D. Fla. 2012) (citing *Sosa*, 133 F.3d at 1419).

Perez contends that she did not know the facts justifying the new allegations in her proposed amended complaint until she learned of them during discovery (and, in particular, during a major deposition push, where 52 depositions were taken from December 3, 2020 through April 26, 2021. Of those, 29 depositions were taken between February 1, 2021 and March 23, 2021).

But lack of diligence can include a plaintiff's failure to timely *seek* discovery to obtain the information necessary to determine whether there are grounds for an amended complaint. *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009). Thus, while it may well be true that Plaintiff did not learn the facts underlying her proposed amended complaint until February or March of 2021, her motion still must confront the reality that Defendants say she should have *sought* that discovery much earlier and that her failure to timely propound discovery and seek deposition testimony doom her motion.

Plaintiff did not take any depositions between the date of the trial scheduling order, June 16, 2020, and the deadline to add parties, September 25, 2020. She filed the lawsuit on September 30, 2019 but did not propound discovery until August 20, 2020, the month before the expiration of the deadline to amend pleadings. All of the 55 depositions

which Perez mentions in her motion were taken after the expiration of the deadline to amend pleadings.

Plaintiff never sought an extension of the Court's September 25, 2020 deadline to amend pleadings.

In her motion, Perez argues that "in large part the main reason for extending deadlines was the defense's motion to disqualify attorney Richard Diaz." [ECF No. 119, p.1]. But the motion to disqualify was filed on November 11, 2020, nearly six weeks after expiration of the September 25, 2020 deadline to amend. Moreover, the Undersigned held a multi-hour Zoom hearing and issued a 29-page Order denying the disqualification motion on December 14, 2020 -- approximately only one month after it was filed.

So the Undersigned is not convinced by the argument that the Diaz disqualification motion litigation is in "large part" responsible for the failure to timely seek discovery, to timely seek leave to amend or to timely seek enlargement of either deadline.

Diligence and Purported Circumstances Justifying Amendment

Plaintiff lists several circumstances which she argues are grounds for justifying the requested amended complaint. Defendants opposed these points on a circumstance-by-circumstance basis, and the Undersigned will use the same procedure here.

By way of summary, however, Defendants generally argue that most of the information was known or available to Plaintiff long before expiration of the deadline to

amend pleadings. Specifically, Defendants contend that Perez had received the State Attorney's Office's ("SAO") close-out report, received the City's responses to her public records requests, received responses to public records requests from the SAO, received documents and information from Defendants in discovery responses and also obtained information from online media news archives.

Defendants highlight the fact the Plaintiff's current counsel sent her statutory notice letter to the City on October 27, 2017, less than a month after the fatal police shooting, and retained an investigator.

In any event, the Undersigned will now discuss the specific circumstances flagged by Plaintiff as providing "a degree of context for the depth and breadth of the cover-up the Plaintiffs [sic] have unearthed." [ECF No. 119, p. 4].

In paragraph 6(a), Plaintiff argues that Detective Teannie Hernandez testified that her probable cause for attempting a traffic stop on Machado's car was that his tag light was out. However, Plaintiff alleges that she learned "within the past two months" that Hernandez "lied" because an inspection of Machado's vehicle has "conclusively determined" that the tag lights "work perfectly to this day." [ECF No. 119, p. 4].

But Defendants explained at the hearing that Hernandez had two main grounds for her probable cause: (1) Machado could not maintain a steady lane while driving (presumably because he was under the influence of cocaine, marijuana and alcohol) and (2) a taillight issue. Moreover, they suggested that the current "working" status of the

light might not be conclusive because the law requires the lights to be visible from 50 feet away, a status which cannot necessarily be achieved by a mere "working" taillight.

But regardless of what significance can be attached to a defense-arranged inspection of Machado's vehicle, the vehicle has been in police custody since 2017 and Plaintiff did not even ask to inspect the vehicle for years – until after expiration of the deadline to amend. At the hearing, Defendants explained that a vehicle inspection was first scheduled for December 2021 – but Plaintiff canceled it. Moreover, the inspection was conducted on March 6, 2021 but Plaintiff did not file her motion for leave to amend until May 12, 2021, more than two months later.

Plaintiff's failure to timely seek an inspection of the vehicle was not because her counsel was unaware of its significance. In fact, an October 27, 2017 demand letter says: "We demand that you preserve the victim's vehicle recovered from the scene, a 2007 Honda Accord." [ECF No. 119-2]. Plaintiff, who attached this letter as an exhibit to her proposed amended complaint, has not proffered a reason why she, through counsel, demanded that the vehicle be preserved in October 2017, but waited years to actually inspect the vehicle.

This is not an example of diligence. To the contrary, it demonstrates a lack of diligence.

Paragraph 6(b) concerns Plaintiff's allegation that CCTV from Hialeah Hospital has "been lost, destroyed or spoliated." [ECF No. 119, p. 4]. This CCTV supposedly

captured a part of the chase from the first shooting (i.e., **not** where Plaintiff was later

fatally shot). Defendants contend that the video was grainy and showed only police units

heading in both eastbound and westbound directions. Moreover, the City represented

that the footage was downloaded to discs and is still in the property room but is not

viewable because the discs are password-protected. The City does not have the required

security software. The hospital changed its software and no longer has access to the older

software. Thus, the City says, the unviewable status of the footage is not spoliation.

But regardless of why the CCTV footage is no longer watchable or whether it

would reveal anything factually significant, Plaintiff did not request this CCTV in

discovery until after expiration of the deadline to amend. In addition, Defendants note

that the CCTV footage was documented in police property receipt records produced by

Plaintiff, who should have timely reviewed those documents and timely requested the

CCTV.

Given these circumstances, the Undersigned is not convinced that Plaintiff acted

diligently in seeking to obtain and view the Hialeah Hospital CCTV footage.

In paragraph 6(c), Perez argues that the Hialeah Police Department did not

conduct its own Internal Affairs investigation after the SAO closed its investigation. *Id*.

While this may well be correct, Defendants argue that this fact was known or readily

available to Plaintiff "before the lawsuit was ever filed and well in advance of the

deadline to amend." [ECF No. 122, p. 6].

Plaintiff does not challenge this explanation. The SAO's close-out report was issued on September 19, 2018, long before this lawsuit was filed in September 2019 and even longer before expiration of the September 25, 2020 deadline for amending pleadings.

Therefore, this is another circumstance which demonstrates a lack of diligence.

In paragraph 6(d), Plaintiff gripes about the adequacy of the Hialeah Police Department's homicide investigation, which it brands as "woefully inadequate in many ways." Perez contends that the City's investigation "did not include any mapping, tracing, or trajectory study at the scene of the second shooting (where Machado was killed), making it impossible to objectively determine if any of the shooters were truthful in their basis for discharging their firearms when they did." [ECF No. 119, p. 5].

Even if the Undersigned were to assume that the police investigation was inadequate and even if I were to further assume that this is linked to a massive police conspiracy to cover up the truth, these assumptions do not address the critical question of whether Plaintiff was diligent.

According to Defendants, this information (about the City's failure to conduct the studies mentioned in the motion) was contained in the SAO's September 19, 2018 close-out report. Plaintiff had access to that report and has not explained why she views this circumstance as a ground supporting the need to demonstrate diligence.

Paragraph 6(e) asserts Plaintiff's theory that Defendants have not produced some key security videos from a Mobil gas station. Defendants contend that Plaintiff has had

all the Mobil footage since September 2019, when it was produced to her in response to public records requests. Moreover, they say that Plaintiff's reference to some Mobil footage produced in May 2021 is a reference to videos which Defendants merely re-produced in discovery. The Undersigned is unable to resolve this factual conflict without an evidentiary hearing and without comparing the videos produced in May 2021 with other videos which Plaintiff already had for almost two years.

Plaintiff does not explain how or why she believes that there are still Mobil security videos which have not been produced. She has not indicated that Defendants possess these missing videos. More importantly (for purposes of evaluating diligence), Plaintiff has not explained why she did not take steps to obtain the allegedly missing footage herself. Given that Plaintiff had Mobil footage since September 2019, she and her attorneys would have presumably viewed the videos on a timely basis, realized that some footage was missing and then taken steps to locate the missing video. Her motion makes no mention of this. Instead, the motion alleges only that footage is missing and has not been produced.

Thus, the motion does not establish diligence concerning the Mobil security videos.

In paragraph 6(f), Plaintiff focuses on her view that the lead homicide detective (Carlos Garcia) failed to obtain security video footage from other businesses, a failure

which led to the detective saying that his own negligence is responsible for this omission.[1] Assuming, for the sake of discussion, that there is other, critical video footage which has not been produced to Plaintiff, this does not necessarily mean that Plaintiff has established good cause for filing an amended complaint which would dramatically affect the case and its scheduled trial date.

In her motion, Plaintiff does not explain why *she* did not try to obtain these supposedly missing videos. As noted by Defendants, Plaintiff's current attorney has been representing her since at least October 27, 2017. In addition, as Defendants further point out, Perez has been using her own investigator, who has been present at most of the depositions taken in the case and who also attended the vehicle inspection and a pre-deposition conference with Maria Benitez, a former police officer who was terminated by Hialeah. Plaintiff initially named Benitez as a defendant but later dropped her.

---

[1] Garcia did not exactly testify that his own "epic negligence" (as Plaintiff portrayed his testimony in her motion) was responsible for not obtaining some additional potential video footage from gas stations. Instead, Plaintiff's counsel required him to answer, over objection, the following question:

"Scenario A, based on 14 what we just heard do you think it was A, that the Hialeah Police Department was just so negligent that they thought they wouldn't get any video value from three open gas stations at 8 and 25, or do you think they were afraid, Scenario B, do you think they were afraid that it would show that the 32 that was alleged to have occurred at 8 and 25 would not be there and they would be in a heap of trouble? Do you think it was A or do you think it was B?"

Garcia gave the following answer: "Okay. 'A,' sir. It was negligence by our department not to cover up anybody." [ECF No. 126-1, pp. 77-78].

Perez "further insists" that "there remains key video footage that has not been produced." [ECF No. 126, p. 5]. But she provides no further detail. For example, is it a specific gas station's video which was not obtained or was a gas station providing incomplete video? Perez does not say. But, regardless of which scenario applies, she has not adequately explained why she did not try to track down the video she insists is missing.

In addition to not explaining why her attorneys or investigator did not try to locate these supposedly missing or incomplete videos, Perez glosses over the fact that she waited two months after taking Garcia's deposition (which purportedly provided evidence of the City's negligent investigation) to file her motion to amend.

In paragraph 6(g), Plaintiff emphasizes that a Hialeah "public relations officer" issued a "deliberately false and misleading public statement" within hours of the shooting. According to the six-page motion to amend, this officer's statement was "crafted to make the shooting look justified and to assure the officers involved that the City would protect them." [ECF No. 119, p. 5].

But this is not a private or secret statement. To the contrary, it was a public statement, issued on the day of the 2017 shooting. If this public statement is in fact a ground for an amended lawsuit, Plaintiff knew about it at the time (or could have learned about it). A failure to follow up on an officer's public statement is not an example of diligence.

In paragraph 6(h), Plaintiff alleges that a "key witness," who testified for three days, testified that the officers were coached by the investigating officers to provide false testimony to make the shooting appear justified. There is no dispute that the "key" witness is former officer Maria Benitez, who gave a deposition on **February 2, 2021**. [ECF No. 126-2]. Moreover, Benitez testified that she was communicating with Plaintiff's attorneys and investigators in the **first half of 2020.**[2]

Given this timing, the Undersigned concludes that waiting until May 12, 2021 [ECF No. 119] to file a motion to amend the complaint does not reflect diligence. According to Plaintiff, Benitez had information which, if true, would constitute ample grounds to seek an amendment: a police cover-up involving instructions to lie and incorrectly portray the shooting as justified. Plaintiff's counsel knew of this substantial allegation since early 2020 but waited until May 12, 2021 to file her motion to amend.

As is the case with the other circumstances, Plaintiff was not diligent in pursuing evidence about this factor or in seeking leave to file an amended complaint.

Paragraph 6(i) is also based on information from Benitez: her allegation that several officers held a "secret illegal meeting" to get their stories straight about giving a unified and consistent false depiction of the shooting. [ECF No. 119, p. 5]. Presumably, Plaintiff's counsel knew about this allegation or could have learned about it in early 2020,

---

[2] In her deposition, Benitez testified that she had a personal reason, unconnected to this case, to visit Plaintiff's counsel. Once she saw him on that matter, she told him about the fatal police shooting of Machado on October 1, 2017. [ECF No. 126-2, pp. 5-6].

when he was meeting with Benitez on another legal matter and she provided information about the shooting. Nevertheless, at a minimum, Plaintiff's counsel knew about this allegation no later than February 2, 2021, when she provided a deposition in this lawsuit. Plaintiff's counsel knew about the ground more than three months before filing the motion to amend the Complaint. Given the nature of this allegation, waiting more than three months to file a motion to amend displays a lack of diligence.

Paragraph 6(j) is not a circumstance justifying an order permitting a post-deadline amended complaint. That paragraph simply says that there are "many other details" in the proposed amended complaint. [ECF No. 119, p. 5]. But it does not say which details should be assessed or how those details would provide good cause.

And paragraph 6(k) is similarly vague, as it merely alleges that the investigating detectives "deliberately failed to *answer* the *4 core questions* regarding self-defense in any shooting during statements from all 11 eyewitnesses to the shooting." *Id*. at 6 (emphasis added). At the hearing, Plaintiff's counsel conceded that the allegation is incorrect because it should have said that the detectives did not *ask* the questions. In addition, he also conceded that he was not familiar with the specific four "core" questions, but he explained that his co-counsel (former police officer Richard Diaz, who did not attend the hearing) knows the questions.[3]

---

[3] Numbered paragraph 140 of the proposed amended complaint explains the four core issues:

Nevertheless, this allegation, even if true, does little to reveal **whether Plaintiff acted diligently** in following up on this circumstance. Perez has not alleged that this circumstance -- learning that investigating officers did not ask these four critical questions -- was only *recently* uncovered. Thus, this circumstance suffers from the same deficiency as the others: it does not help to support the necessary finding that Plaintiff was diligent in learning the facts she wants to include in an amended complaint which would dramatically change the litigation, substantially delay the lawsuit and create major additional amounts of attorney's fees and costs for Defendants.

In her Reply, Perez argues that Defendants "fail to acknowledge the state of the world during the pending of the case" because "COVID-19 absolutely ravaged South Florida in particular during the first part of 2020." [ECF No. 126, p. 2]. Although the coronavirus may have hindered lawyers in the ability to take discovery and move cases along in non-trial activities in March and April 2020, Courts and attorneys in South Florida were certainly able to continue the litigation process. The Undersigned, for example, has presided over two Zoom bench trials lasting several days (with Zoom

---

the four most important facts any police shooting (including homicide) investigator needs to know, are: (1) What was the threat the officer confronted? (2) What was the distance between the officer and that threat at the relevant time? (3) What was the officer's reaction time relative to the threat and distance? and (4) What was the imminence of the threat? These are referred to as the "core questions" and all four have to be known to fairly determine if self-defense is supportable to the shooter.

[ECF No. 119-1, p. 44].

testimony from witnesses outside of the United States and an all-day evidentiary hearing). Similarly, I presided over dozens of mediations and multiple dozens of Zoom discovery hearings. Based on those hearings, I know that lawyers continued to actively move their cases forward during the past year and that depositions were routinely taken via Zoom.

Because Plaintiff must demonstrate diligence in order to show good cause, the Undersigned finds that Plaintiff has not established good cause under Rule 16(b) for amending her Complaint long after the deadline to amend and add parties expired. *See Sosa*, 133 F.3d 1417; *see also Norris v. Hicks*, No. 20-11460, 2021 WL 1783114 (11th Cir. May 5, 2021) (affirming order denying motion for leave to amend complaint to add a law enforcement agent as a defendant in a lawsuit filed against police officers involved in a no-knock search warrant and rejecting Plaintiff's argument -- that he established good cause because he could not have earlier discovered the evidence in the exercise of reasonable diligence – after noting that the district court pointed out that Plaintiff obtained "significant information" about the officer's involvement earlier in the case).

<u>Rule 15 Analysis</u>

If good cause is shown (which it was not), then the analysis shifts to a Rule 15 assessment.

Under Federal Rule of Civil Procedure 15, the grant or denial of an opportunity to amend "is within the discretion of the District Court." *Baez v. Banc One Leasing Corp.*, 348

F.3d 972, 974 (11th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A court properly exercises its "broad discretion" to deny leave to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies . . ., undue prejudice . . ., [or] futility of amendment." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (quotation omitted); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

A Court should not allow leave to amend pursuant to Federal Rule of Civil Procedure 15(a) when the party moving for amendment has exhibited: "undue delay, bad faith or dilatory motive on the part of the movant...[or] undue prejudice to the opposing party by virtue of allowance of the amendment, futility of [the] amendment..." *Foman*, 371 U.S. at 182.

Because Perez has not established good cause under Rule 16(b)(4), the Undersigned need not reach the issue of whether to grant leave to amend under Rule 15. Nevertheless, in an abundance of caution, the Undersigned will briefly address the Rule 15 factors.

First, the Court's discussion about diligence (or the lack therefor) applies to the undue delay factor of the Rule 15(a) analysis. There is no need for the Undersigned to repeat or regurgitate those factors again here. For present purposes, it is more than sufficient to note that Perez's attorney served his statutory notice letter on October 27, 2017, waited years to take depositions but was in possession of, or could readily obtain,

the information he now says justifies an amendment of the Complaint. Likewise, as noted in the discussion above, Plaintiff did not recently uncover new information which was previously unavailable. To the contrary, she learned some specifics (such as the working taillight) which she could have learned earlier had she timely pursued discovery or comprehensively reviewed the material she already had in her possession.

Second, the Undersigned agrees with, and is sympathetic to, the concerns of undue prejudice asserted by Defendants.

The parties have already taken 55 depositions and exchanged voluminous discovery materials pertaining to the current Defendants and the current causes of action alleged. To allow amendment at this point would send the litigation back to square one.

Allowing a newly amended complaint would re-open the pleadings and require Defendants to raise new motions to dismiss, which would significantly tax the parties' and the Court's resources through the briefing and necessary rulings. Adding eight (8) new defendants (assuming they can be properly served) will also increase the number of briefs and the amount of judicial resources required. These newly named defendants and their counsel will have been deprived of the opportunity to participate in and defend all of the depositions taken to date. The existing parties would thus be subject to re-deposition and examination by as many as eight (8) new attorneys representing the newly named defendants.

Third, extensive fact discovery has already concluded. Allowing amendment

would re-open fact discovery, both as to any newly pled causes of action which survive a motion to dismiss, and as to any of the eight (8) newly added defendants. Written discovery would be re-opened, with the addition of eight (8) new parties who would propound their own discovery requests, and upon whom the existing Defendants would need to propound discovery. Each of the 55 witnesses already deposed would be subject to re-deposition by any of the newly added defendants, as well as cross-examination by the numerous Defendants already party to this litigation – all after the close of fact discovery.

In addition, adding eight new defendants would likely result in the addition of five or six additional attorneys. Combined with the existing attorneys, this new lineup would mean that any new depositions would require the coordination of at least 10 law firms – an administratively burdensome task which would be even more complex given the dozens of depositions which would have to be retaken.

Moreover, the Undersigned accepts at face value the defense attorneys' representations about their extremely busy trial and discovery schedules in other cases over the next six months. Given this practical reality, taking 55 depositions would not be completed any time quickly. Rather, it seems logical to conclude that it would take many months, if not longer, to retake depositions, especially because the new defense attorneys would need to familiarize themselves with a factually detailed record.

<u>Futility</u>

Concerning the merits of any new proposed claims, the Undersigned will first focus on the Section 1983 claim against the City for a "subsequent ratification" / "cover-up conspiracy" theory in connection with Machado's death.[4] This theory, asserted in Count I of the proposed amended complaint, pursues claims for Perez in her individual capacity and for Juan Machado – but they are not plaintiffs in the case.

The only Plaintiff in the existing lawsuit is Perez, in her status as personal representative for Machado's **estate.** Moreover**,** paragraph 2 of the proposed amended complaint continues this procedural posture, alleging that "this lawsuit permits claims for damages for the wrongful death of a 24-year-old, Lester Jesus Machado, brought by

---

[4]     Paragraph 242 of the proposed amended complaint alleges that

Defendants violated Plaintiffs' (Yolaisy Perez and Juan Machado) constitutional right to due process under the 14th Amendment via the after-the-fact conspiracy to cover up the true facts leading to the shooting. Plaintiffs allege that the after-the-fact conspiracy was done with the knowledge and agreement of the City through its police department, including command level officers at or near the top of the chain of command, and as such constitutes subsequent ratification of the individual officers' unconstitutional acts, i.e., the shooting and death of Lester Machado.

[ECF No. 119-1, p. 78].

The same paragraph alleges that "the conspiracy to cover-up the unconstitutional and illegal shooting, and spoliation of critical evidence, as alleged herein, constitutes a pre-existing pattern and practice on the part of the Cito to condone unconstitutional and illegal acts by its police officers." *Id.*

his mother, Yolaisy Perez, as *Personal Representative of the Estate*, *on behalf of the Estate* and Machado's statutory *survivors*." [ECF No. 119-1, 2]. (emphasis added).

Because Juan Machado and Perez (in her individual capacity) are not parties to the existing lawsuit *or* the proposed amended one, they cannot sue the City (or any Defendant, for that matter) for any alleged violation of their federal rights.

A decedent like Lester Machado has no §1983 claim for an after-the-fact 'cover-up' conspiracy because the decedent is, by definition, deceased, and thus has no constitutional right that can be violated in order to give rise to a cause of action under §1983. *See Whitehurst v. Wright*, 592 F. 2d 834, 840 (5th Cir. 1979) ("After death, one is no longer a person within our constitutional and statutory framework, and has no rights of which he may be deprived.").

As in *Whitehurst*, the events of the alleged "cover-up" here took place after the decedent had been shot and killed and there is no allegation that a conspiracy to kill Plaintiff's decedent, or to cover up the killing after-the-fact, existed before the shooting occurred. *See id*; *see also Love v. Bolinger*, 927 F. Supp. 1131, 1136 (S.D. Ind. 1996) ("The alleged coverup … took place after [the plaintiff] was killed, and thus could not have violated any of [his] constitutional rights."); *Guyton v. Phillips*, 606 F.2d 248 (9th Cir. 1979) ("[T]he Civil Rights Act, 42 U.S.C. §§1983 and 1985, does not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights which occurred after his death.").

Confronted with this inescapable reality, Plaintiff attempts to argue for the first time *in her Reply* that she intended to list Lester Machado and herself (in her individual capacity) as additional plaintiffs. She describes this oversight as a "scrivener's error," even though three separate attorneys reviewed the proposed amended complaint before it was filed.

But courts generally do not consider these types of untimely arguments raised in reply briefs. *See Little v. T-Mobile USA, Inc.*, 691 F. 3d 1302, 1307 (11th Cir. 2012) ("Letting the plaintiffs put forward their arguments on this issue for the first time in the reply brief would deprive [the defendant] of the 'opportunity to reflect upon and respond in writing to [the plaintiffs'] arguments' and would deprive this Court of 'the benefit of written arguments.'") (quoting *Hamilton v. Southland Christian School, Inc.*, 680 F. 3d 1316, 1319 (11th Cir. 2012)). Defendants did not have the opportunity here to brief Plaintiff's new argument -- that she actually intended to add two plaintiffs -- because she raised it for the first time in her Reply. *See also Berkower v. USAA Casualty Insurance Co.*, No. 15-23947, 2017 WL 11615108, at *2 (S.D. Fla. Feb. 21, 2017).

Given that Plaintiff has not established good cause and did not succeed on several of the factors in the Rule 15 analysis (which was not even required in the first place because she failed to clear the Rule 16 good cause hurdle), the Undersigned will address only two additional merits points: the two wrongful death claims in Counts III and IV of the proposed amended complaint.

In her proposed Count III, Plaintiff would bring a claim against the City for wrongful death pursuant to the Florida Wrongful Death Act, §§ 768.1 – 768.26, Florida Statutes.

However, this Court has already ruled that Plaintiff cannot state a cause of action against the City under Florida's Wrongful Death Act (because there is no cause of action for negligent use of excessive force under Florida law), and that the City is entitled to sovereign immunity on such a claim under §768.28(9)(a). [ECF No. 76, pp. 5-6].

This Court has already ruled that this cause of action is insufficient to withstand a motion to dismiss. This proposed amendment is therefore futile. *See generally Rincon v. Miami-Dade County*, No. 16-cv-22254, 2020 WL 7344633 (S.D. Fla. March 31, 2020) (recommending that Court grant, in part, Defendants' motion to dismiss a lawsuit arising from a fatal police shooting because a wrongful death claim for excessive force by a police officer must arise from intentional torts, and noting that "there is no such thing as the 'negligent commission of an intentional tort.'").

In her proposed Count IV, Plaintiff would amend to include a claim for wrongful death against Lt. Luis. But this Court previously ruled that Plaintiff does not have a claim against Lt. Luis under Florida's Wrongful Death Act because:  (i) "the Complaint fails to allege that Lt. Luis' use of force in ramming his vehicle into Machado's vehicle – or any action on the part of Lt. Luis – caused Machado's death[;]" and (ii) Plaintiff failed to defeat

Lt. Luis' statutory immunity from personal liability under section 768.28(9)(a) for this claim. [ECF No. 77, pp. 7-8].

Nothing in Plaintiff's proposed amended complaint is sufficient to overcome or alter this Court's earlier findings supporting the dismissal of the wrongful death claim sought against Lt. Luis. This Court has already ruled that this cause of action is insufficient to withstand a motion to dismiss. This proposed amendment as to Defendant Luis is also futile.

**Conclusion**

The Undersigned denies Plaintiff's motion for leave to file an amended complaint.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on July 14, 2021.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All Counsel of Record